UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CORNERSTONE NATIONAL
INSURANCE COMPANY                                                                     PLAINTIFF

v.                                    No. 5:20-CV-05064

PEDRO RODRIGUEZ, SR., et al.                                                        DEFENDANTS

**OPINION AND ORDER**

Before the Court is Plaintiff Cornerstone National Insurance Company's ("Cornerstone") motion (Doc. 43) for summary judgment, brief in support (Doc. 44), and statement of facts (Doc. 45). Defendants Dalia Griselda Ceja Arajuo and Monica Ceja Arajuo filed a response (Doc. 46), brief in opposition (Doc. 47), and statement of facts (Doc. 48). Defendants Pedro Rodriguez, Sr., Pedro Rodriguez, Jr., and Elvira Rodriguez Barroso filed a response (Doc. 49), brief in opposition (Doc. 50), and statement of facts (Doc. 51). Cornerstone filed a reply (Doc. 52) and brief in support (Doc. 53). For the reasons set forth below, the motion will be GRANTED.

**I.  Background**

Cornerstone issued an auto liability insurance policy to Defendants Pedro Rodriguez, Sr. ("Rodriguez, Sr.") and Elvira Rodriguez Barroso. The policy listed a 2011 Chevrolet Silverado 1500 Crew Cab LS. Rodriguez, Sr. and Elvira Barroso's son, Pedro Rodriguez, Jr. ("Rodriguez, Jr.") was not listed as a named driver on the policy.

The portions of the policy relevant to this lawsuit read:

> **PART A – LIABILITY COVERAGE**
> **INSURING AGREEMENT**
> A.   We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident . . . .  We have no duty to defendant any suit or settle any claim for **bodily injury** or **property damage** not covered by this policy.
> . . .

1

  B.  **Insured** as used in this Part means:
   1. You or any **family member** for the ownership, maintenance or use of any auto or trailer.
   2. Any person using **your covered auto**
   3. For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
   4. For any **auto** or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part.  This provision (B.4) applies only if the person or organization does not own or hire the **auto** or **trailer**.

. . .

**EXCLUSIONS**

A. We do not provide Liability Coverage for any **insured**:

. . .

  8. Using a vehicle without a reasonable belief that that **insured** is
   entitled to do so.

. . .

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

. . .

  4. any vehicle while:
   a. Taking part in or competing in; or
   b. Practicing or preparing for;
   any pre-arranged or organized racing or speed contest including but not limited to:
   a.  Hill climbing;
   b. Mud Contests; or
   c. Cross-country contests or road rallies.

. . .

**PART B – PERSONAL INJURY PROTECTION COVERAGE**
**INSURING AGREEMENT**
A. We will pay personal injury protection benefits to or for an **insured** who sustains **bodily injury**.  The **bodily injury** must:
  1. Be caused by an accident; and
  2. Arise out of the maintenance or use of a **motor vehicle** as a **motor vehicle**.

. . .

**EXCLUSIONS**

A. We will not provide Personal Injury Protection Coverage for **bodily injury**:
  1. Sustained by an **insured** while:
   a. **Occupying your covered auto** without the **named insured's** express or implied consent; or
   b. Not in lawful possession of **your covered auto**.

> 2. Sustained by any **insured** while **occupying** any **motor vehicle**, other than **your covered auto**, unless that **insured** has or reasonably believes he has, the permission of the owner to use such **motor vehicle.**

. . .

> **PART D – UNDERINSURED MOTORIST COVERAGE**
>
> . . .
>
> **EXCLUSIONS**
>
> . . .
>
> B. We do not provide Underinsured Motorist Coverage for **bodily injury** sustained by any insured:
>
> . . .
>
>> 2. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.
>
> . . .
>
> **PART E – COVERAGE FOR DAMAGE TO YOUR AUTO**
>
> . . .
>
> **EXCLUSIONS**
> We will not pay for:
>
> . . .
>
>> 15. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used to:
>>    a.  Take part in or compete in; or
>>    b.  Practice or prepare for;
>>    any prearranged or organized racing or speed contest including but not limited to:
>>    a.  Hill Climbing;
>>    b. Mud Contests; or
>>    c. Cross-county contests or road rallies.

(Doc. 43-1, pp. 5-17) (emphasis in original).

On February 16, 2017, Rodriguez, Jr., took the keys to the 2011 Chevrolet Silverado. Rodriguez, Jr. and several other friends decided to skip school and meet at a local lake. At some point during the day, the group traveled to a nearby McDonald's. Rodriguez, Jr. was driving the 2011 Chevrolet Silverado, and Jose Barroso and Juan Barroso were passengers. Gerardo Barroso Martinez was driving a 2000 Chevrolet Suburban. Maritza Gonzales, Tatiana Merlos, Citalli Garcia, Estafani Espana Ramos, and Monica Ceja Arajuo were passengers in the Suburban driven by Gerardo Martinez. On the way to McDonald's, the Chevrolet Silverado driven by Rodriguez, Jr. and the Suburban driven by Gerardo Martinez were involved in a motor-vehicle accident.

3

As a result of the accident, the drivers and passengers suffered personal injuries and both vehicles sustained significant damage. Patrolman Carey Landrum of the Springdale Police Department investigated the accident, and allegedly Rodriguez, Jr. and Martinez admitted to Patrolman Landrum that they were racing their cars to McDonald's. Rodriguez, Jr. was charged with driving without a driver's license, reckless driving, racing on a highway, and driving while under the influence. Rodriguez, Jr. did not have a driver's license nor did he have permission to drive the 2011 Chevrolet Silverado.

Cornerstone filed a complaint for declaratory judgment in this Court on April 14, 2020, seeking a declaration that there is no coverage under the policy for any property damage and/or bodily injury sustained by any party arising out of the February 16, 2017 accident and that there is no duty on its part to provide a coverage defense and/or indemnify any party.

## II.     Legal Standard

After viewing the record in the light most favorable to the nonmoving party and granting all reasonable factual inferences in the nonmovant's favor, a motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Serv., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted). The same standard applies

to cross-motions for summary judgment, with each party's motion reviewed in its own right and the parties "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

### III. Analysis

A federal district court sitting in diversity applies its forum state's substantive law. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007). In Arkansas, the duty to defend under an insurance policy arises when there is a possibility that the injury or damage may fall within the policy coverage. *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC.*, 411 S.W.3d 184, 190-91 (Ark. 2012). Generally, the "pleadings against the insured determine the insurer's duty to defend." *Id.* To determine if a duty to defend arises, the "language in the contract from which the purported duty arises" is examined. *Id.* "The provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'" *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (quoting *Horn v. Imperial Cas. & Indem. Co.*, 636 S.W.2d 302, 303 (Ark. 1982)). "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Id.* at 750 (quoting *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 470 (Ark. 1976)).

After it is determined that coverage exists, it must then be determined if exclusionary language within the policy eliminates the coverage. *See Castaneda v. Progressive Classic Ins. Co.*, 166 S.W.3d 556, 560-61 (Ark. 2004) (citing *Norris v. State Farm Fire & Cas. Co.*, 16 S.W. 3d 242 (Ark. 2000)). Exclusions must be expressed in clear and unambiguous language. *See id.* If language is unambiguous, the plain language of the policy will be used. *Id.* (citing *Elam v. First*

*Unum Life Ins. Co.*, 57 S.W.3d 165 (2001)). Language is ambiguous if "there is a doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696, 701 (Ark. 2002). When language is ambiguous, the policy will be construed "liberally in favor of the insured and strictly against the insurer." *Castaneda*, 166 S.W.3d at 560-61.

The policy contains a "reasonable belief" exclusion. The reasonable belief exclusion provides the policy excludes coverage for "using a vehicle without a *reasonable* belief that the insured is entitled to do so . . . ." (Doc. 43-1, p. 6). Cornerstone argues this exclusion applies because there is no question that Rodriguez, Jr. knew he did not have permission to drive the 2011 Chevrolet Silverado. Defendants admit that Rodriguez, Jr. did not have permission to drive the vehicle, however, they argue this fact is based on examinations under oath that are inadmissible hearsay. Neither party argues the exclusion is ambiguous, and the Court agrees.

On a motion for summary judgment, a court considers "only admissible evidence and disregard[s] portions of various affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions a fact." *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004) (citing *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003); Fed. R. Civ. P. 56). Hearsay is defined as a statement that the declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "[A]n admission by a party opponent is not hearsay when the statement is 'offered against a party and is . . . the party's own statement, in either an individual or representative capacity.'" *United States v. Heppner*, 519 F.3d 744, 751 (8th Cir. 2008) (citing *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008)).

6

The portions of the examinations under oath Cornerstone relies on in its motion for summary judgment fall under the hearsay exception for statements made by a party opponent. Defendants Pedro Rodriguez, Jr., Pedro Rodriguez, Sr., and Elvira Rodriguez each stated in their examinations under oath that Rodriguez, Jr. did not have permission to drive the 2011 Chevrolet Silverado.  No reasonable juror would find that Rodriguez, Jr. had a reasonable belief to drive the use the vehicle, therefore, the reasonable belief exclusion applies.

Separate Defendants Dalia Griselda Ceja Arajuo and Monica Ceja Arajuo ("Arajuo Defendants") also argue the reasonable belief exclusion is analogous to a denial of coverage based on misrepresentation or fraud and under Ark. Code Ann. § 23-89-303(d)(1).  Cornerstone cannot rescind bodily injury or property damage liability coverage to a third party.  Ark. Code Ann. § 23-89-303(d)(1) provides:

> However, an insurer shall not be able to rescind bodily injury or property damage liability coverage under an insurance policy for *fraud or misrepresentation* with respect to any injury to a third party when suffered as a result of the insured's negligent operation of a motor vehicle.

(emphasis added).  The Arajuo Defendants argue they are innocent third parties who have asserted a claim for bodily injury against Rodriguez, Jr., and Cornerstone cannot rescind bodily injury coverage for the Arajuo Defendants.  Although Cornerstone does not dispute the Arajuo Defendants are innocent third-parties, Cornerstone argues Ark. Code Ann. § 23-89-303 applies when an insurer cancels an insured's policy, not when the insured is denying coverage based on an exclusion in the policy.  The Court agrees.  Ark. Code Ann. § 23-89-303 governs the grounds for cancellation of insurance policies, not exclusions.

The policy also provides an exclusion for any vehicle while

(a). Taking part in or competing in; or
(b). Practicing or preparing for;

7

> Any pre-arranged or organized racing or speed contest including but not limited to:
> a. Hill climbing;
> b. Mud Contests; or
> c. Cross-country contest or road rallies

(Doc. 43-1, p. 4). Cornerstone argues this exception applies because Rodriguez, Jr. was racing Barroso Martinez to the nearby McDonald's. Cornerstone relies on the accident report prepared by Patrolman Landrum which states the drivers of the vehicles (Rodriguez, Jr. and Martinez) said "they were racing to see who could get to McDonald's first . . . ." (Doc. 43-5). The Defendants argue the accident report is inadmissible hearsay and cannot be relied on for summary judgment, therefore a question of fact as to whether Rodriguez, Jr. was racing remains for trial. Defendants base their argument on the Arkansas Rules of Evidence 803(8) which provides investigative reports by law enforcement personnel are not an exception to the hearsay rule.

The Arkansas Rules of Evidence do not apply to this case and Federal Rule of Evidence 803(8) is substantially different to Arkansas Rule of Evidence 803(8). Rule 803(8) of the Federal Rules of Evidence provides a record or statement of a public office is not hearsay if:

> (A) it sets out:
> (i) the office's activities;
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> (B) the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness.

The accident report falls under this exception and Defendants have not shown the source of information or other circumstances indicate a lack of trustworthiness. However, even though the accident report is admissible as a hearsay exception, Ark. Code Ann. § 27-53-

208 provides no accident report shall be used as evidence in any civil or criminal trial arising out of the accident.[1]

Even if the accident report is admissible, it is clear that Rodriguez, Jr. was not engaged in any "pre-arranged or organized racing or speed contest." The policy only excludes those racing or speed contests that are *prearranged* or *organized* and does not exclude any type of spontaneous racing. Although it is likely that a reasonable jury would find the drivers and their passengers decided to race to McDonald's, the same jury would find the race was spontaneous and therefore not excluded by the policy. However, because the reasonable belief exclusion applies, it is immaterial that the racing exclusion does not apply. There is no coverage under the policy for any property damage and/or bodily injury sustained by any party arising out of the accident, and Cornerstone has no duty to defend and/or indemnify any party or pay any settlement or judgment. Cornerstone's motion for summary judgment will be granted.

**IV.   Conclusion**

IT IS THEREFORE ORDERED that Cornerstone's motion (Doc. 43) for summary judgment is GRANTED.  A declaratory judgment will be entered separately.

IT IS SO ORDERED this 14th day of January, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE

---

[1] At least one court has found this statute only applies to "accident reports that are required to be filed by persons *other than* law enforcement officers, not accident reports . . . which are required to be filed by law enforcement." *Alfoaady v. Will Tranp., Inc.*, No. 2:13CV00029 SWW, 2015 WL 3649851, *6 (E.D. Ark. June 4, 2015).